Good afternoon. This case on today's docket is the case of Shonda Soulon, MPA Shonda Crane v. Jason Soulon. And we have Jaron Morrell for the appellant and Aaron Carmine for the athlete. So, when you guys are prepared to proceed, we'll meet. Good afternoon. I am Jaron Morrell, and I represent Shonda Crane, previously Shonda Soulon. Good afternoon, Mr. Carmine. I briefly just want to summarize kind of the timeline that got us here. The parties were divorced in 2004, and my client, Shonda Crane, was awarded primary custody of their two minor children. Shortly after that, Mr. Soulon moved out of the state of Illinois, and the visitation, which was awarded in the original divorce decree, was in every other weekend. And he continued to exercise that, but rather than the kids going to him out of state, he came to his mother's house in Oden, Illinois, and the visitation occurred there. So this was never a situation where the children were going out of state on a frequent basis. That went pretty well for nine years. And in 2013, my client filed a petition to modify a couple of things, primarily transportation of how the kids were getting to Kansas City when they were going there, which was rather infrequently. Mr. Soulon then filed a petition to modify custody, and that is in the record. Nowhere in this petition to modify custody was removal ever referenced. A trial was set on May 29th of 2014, and I was not attorney of record then. My client was represented by a Jessica Hudspeth, and Mr. Soulon was represented by Jane Laundrie. But there was substantial negotiations as far as I understand, and after a motion to bar was had, some of the evidence of my client was barred. So there was a break that was taken, and from how I could look at the record, it was asked that the children would be interviewed before any testimony took place. So the children are taken, and they are interviewed by the trial judge, Judge Hardigan. Was the attorney present or not? It is my understanding that both of the attorneys were present. So after that takes place, I guess there is quite a bit of negotiations again, and then there is an agreed order that is recited onto the record. The next day, my client, Ms. Crank, goes to her attorney's office and says, I did not want to enter into this agreed order. Essentially, you forced me into it. How do I make this go away? She says, this can't go away. She then tries to contact my office. It's a weekend. She finally gets a hold of me on Monday and says, how do I fix this? I was forced into this agreement. I was told that my son wanted to go live with dad. I don't think this is on the record. It is on the record. It is? We do have a transcript of the children's in-chamber interviews. We do? Okay, so it's in the record. It is in the record. And at that point, I obviously didn't have that. You know, you take everything your clients tell you with a grain of salt, and you hope it's the truth, but then you look at the record. So when I'm initially hired, I think that if I were to appeal this, my only hope is duress or coercion or fraudulence representation. Excuse me. So I take the case, and I start getting the record. And since this is an agreed order for removal, the first thing I start looking for is a petition for removal. And I'm thinking I'm missing something, and I call the courthouse, and there is no petition for removal. Excuse me. So that causes me some concern. And essentially, what had happened was there was only a petition for custody ever filed. And in the wherefore paragraph, no relief or removal was granted. But they said, well, it doesn't matter because it was granted by an agreed order. Removal was agreed to by agreement. And frankly, I wasn't sure of what the law on that was at all. It would have made sense to me that you have to ask for something to be granted it, but, you know, I began doing my research. And that's when I'm going back to first year law school reviewing what subject matter jurisdiction is. And I file a motion to reconsider saying the court didn't have any subject matter jurisdiction to enter an order for removal because it was never properly asked for. And essentially, in order to appeal something, Supreme Court Rule 304B says if there is a custody order, it doesn't matter. If there are still things pending with the circuit court, I can go ahead and appeal it if I don't like it. If there's a removal order and there are still other things pending, those have to be taken care of before I can appeal them. There are several things still pending with the circuit court. There's a fee petition, a motion for psychological evaluation, several different things that are still sitting there. So after my motion to reconsider hearing, I wanted Judge Hardigan to clarify for me if he was saying this was a valid removal order, how could he say it was okay to appeal because there are still things pending? And Supreme Court Rule 304 basically says that. You can't do that. In the transcript, I state just that to Judge Hardigan. I state 304B-5 says that custody judgments are immediately appealable if there are still underlying pleadings in front of the court. And the court says, yes, ma'am. And I say, and I'm not allowed to do that under a removal if there's still pleadings pending, which there are in this case. And I think it makes sense at this point, if my client wishes to appeal, to do that at this point. And the court states, I understand that. So then I inquire. So I guess what I'm needing clarification on is whether the court feels that if there is a, based upon its order of custody, or if it's the proper time to appeal, I mean, I feel it is. And the court says, I feel it's an appealable order. And right there, I think that's the error with what the court did. If it says he feels it's the proper time to appeal, it has to be a custody order, not a removal order. And Mr. Toulon was granted removal. He was told to remove the child from the state of Illinois. And the minor child is currently living in Kansas City, outside of Illinois. So right there. Is this a surprise to her? A surprise to my client that the child was allowed to go? That the child would be living in Kansas City when she signed the agreement? It was not particularly. Her main complaint to me was, I was told that my son had told the judge he wanted to live with dad. And Jessica's husband, the prior attorney, stated, if you don't let him go, the judge is going to take both of your children. And essentially, I believe that was what was said. So it was not a surprise to her that the child was allowed to go, because she didn't know that was what the agreed order was. What the surprise to her was, when I discovered this removal issue, because I didn't know that was going to be an issue I was here on. I thought it was going to be just duress or coercion. The surprise to her was, as we're reviewing the law and going through everything, that the court let it go on this law. When I was confident that the removal order should not have been valid, because there was no subject matter jurisdiction that Mark was allowed to stay there. But no, I don't think it was a surprise to her, after the order was entered. Now, there is two children. One child is still with her. So the children were split up. Jane Wander, who was on the other side, she stated she agreed and she thought this was an appealable order. So everybody agrees that it's appealable, which in my mind means it must have been a custody order. But regardless, the court says, well, we'll let the appellate court make that ultimate decision. So here I am. Now, the case of Lynch and B. Williams states, the court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition. And these pleadings function to frame these issues for the trial court and to circumscribe the relief the court is empowered to order. A party cannot be granted relief in the absence of corresponding pleadings. Thus, the circuit court's jurisdiction, while plenary, is not bail-less, and where no justiciable issue is presented to the court through the proper pleadings, the court cannot adjudicate an issue corresponding. So, if removal wasn't properly presented, the court can't enter an order for removal. They just can't. I believe that leads to the inevitable question, well, it was an agreed order, so why does it really matter? If the pleading was properly framed, because it was done by an agreement. And I think that is addressed primarily through the Proback case, and that site is 349 Illap 3rd 894, where it states, although a consent decree is not a judicial determination of rights, it's a recordation of the party's private agreement in a judicial order. But any order or judgment of the court is still void in the absence of subject matter jurisdiction, and it may be attacked at any time. So, whether it's by an agreement or through a hearing, you still can't do it unless the relief was asked for. And if you think about it, that makes sense, because how can you be granted something you didn't ask for in the first place? It's kind of like, it would have seemed like more work for Mr. Sulon to have to go back, realize he forgot to ask for removal, and to amend his pleading, since it's been the time and the money doing that. But if we're cutting corners and allowing corners to be cut, what does that lead to? I mean, the foundation of our system is we have to ask for something to be granted it, and if we allow those cutting corners to take place, then there's a real problem. Now, this case was similar, okay, the matter of In re the Marriage of Brogan, and this is a recent case, addressed the issue of whether custody and removal, they can kind of be viewed as the same thing. And this was actually just addressed in 2015, and Brogan specifically states, if our Supreme Court and our appellate court would have wanted a custody judgment and a removal judgment to be viewed as the same thing, it would have done it, and our court has a pretty good understanding of what the law is, and the court doesn't want removal and custody to be viewed as the same thing. And it actually came to the appellate court twice, and the appellate court pretty much said, if you didn't hear us the first time, we told you, they're not the same thing. The appellate process is not the same in both of them. You have to ask for them separately, which was not done in this case. Now, inevitably, if the court were to find that there was somehow subject matter jurisdiction, I have also, as my third issue in this matter, raised that regardless, this order is not valid because it was obtained by Gorgon. And as I previously told the court, the in-camera interview of the minor children, it is in the record. But what is in the record that would support this allegation? Well, essentially, when the minor children were interviewed, they went back and my client was told that Mark, which is the child that is now in Missouri, wants to live with his dad. And that's going to be in the record? I don't think that part is in the record. And there are some things that have been brought up past then that I can't bring up in front of the court. But I think the fact that it was a completely neutral interview with a minor child, that he didn't want to live. Is there a transcript of the in-camera? There is. There is. And I'm trying to reflect back onto the record whether it was specifically stated on the record when this agreed order was being put in that Mark preferred to live with his dad and that was why this was entered. I don't believe that is there. So I can't definitively say to the court that is or is not there. But I can say that without being told this, and Ms. Hudspeth, she did admit in the record there are, I believe, some reports to the ARDC that were made against Ms. Hudspeth as to whether or not she stated that Mark wanted to live with the dad and why this agreement was reached. I don't, I'm not positive whether or not those are in the record. And I'm trying to tread on light ground on whether those were in there. But my client stated in her brief that she would never have agreed to this absent being told Mark wanted to live with his dad. And I believe that even in Mr. Carnine's response, he kind of agreed with that statement. It's just it doesn't, it doesn't have the opportunity. Thank you. Thank you. Mr. Carnine? Do you agree that she was coerced into agreement? Good point. I'll answer that question first, Your Honor. Please. What is in the record to support her answer? August 13, 2014, the evidence deposition of Sean's then-attorney was taken, evidence deposition. A couple days later, August 21, that evidence deposition was filed, which is why it's filed. So wait, the evidence deposition was taken with respect to how, what suit or? First of all, Your Honor, Erin Carnine, thank you. I represent Jason Stoltman for the record. I didn't represent him in the trial court. The evidence deposition was taken of Sean's former attorney. I'm pretty sure Ms. Merrill was there and Jason's former attorney, Jane Washington, was there. So I presume that the evidence deposition was taken for the coercion concept. It was filed with the trial court. Was it in a motion to reconsider or something? She referenced it in her motion to vacate. She had three post-trial motions. Her motion to vacate was based upon that. Her motion to vacate was actually filed before the evidence deposition. So I had that same question. So the problem is there's a hearing. The last hearing in this case is August 29, 2014. Sean's former attorney was subpoenaed to that. But for whatever reason that I am unclear of, and it doesn't really matter now, the subpoena was withdrawn. So presumably August 29, 2014 was the final hearing when everything was left. And presumably it would or should have been at that hearing where there was testimony about coercion and promising. I did raise that concept in my brief with respect to the statement of facts as well as the argument within the coercion in that there is nothing there. The statement of facts presumes what was said, presumes discussions between former counsel and Sean. But it's all of course the record. I don't think it's in the record. Well, that's what I mean. It's all outside the record. Yes. I mean, the presumption in her current health brief presumes coercion. Her motion to vacate attached some affidavits towards it as such to support it. That's my problem. Well, the odd thing about the coercion thing is that it doesn't have anything to do with Jason. It doesn't have anything to do with Jason's attorney. It's not even the same with her part of the coercion. It was purely between her and her own attorney. And to answer this question, after the appeal was filed, I filed a motion to supplement the record because I didn't know what was going on either because that part wasn't there yet. The transcript of that very last hearing, in which there's just a small line that says, the judge says, I presume the subpoena has been taken care of. Yes, it was withdrawn. That was it. You know, I don't want to get you to run out of time because I think that's enough. Because what I'm really interested in is whether or not the court had jurisdiction to accept the agreed to order on the removal. Appellant's first two categories of argument are, one, court didn't have subject matter jurisdiction. Two, can an agreed order incorporate findings that weren't pled? Here's the answer to that question. This was an agreed order. That's the overriding theme of this list, of my entire list, of agreement and agreement. Ms. Merrill said that nobody was awarded custody. It was a pure agreement. Every case that is referenced in Appellant's brief includes a contested hearing, all of them. In this respect, in the trial court, in this case, the court did not resolve any controversies. The courts made no findings. There were no standards. The case of Rogin was referenced. That case was contested, but it was because an improper standard may have been used in determining the difference between removal and custody. It was clearly convincing, so the appellate court sent it back and said, here's the right standard, but it was a contested hearing. Ligon case that was also mentioned was also contested. And the big problem with Ligon is one of the parties didn't receive notice and wasn't even there. So, in this case, we've got, and if you think about the concept, if you see, subject matter jurisdiction in a divorce court means everything that the divorce court could hear. Custody, the dependency, exemption, child support, removal, all that pantheon of things that a court would consider. An example of my brief when I was thinking through subject matter jurisdiction was a case I referenced, Dobbs. Parties made an agreement to have visitation of a 24-year-old child. Now, they can agree all they want, and then they present that agreement to the trial court, but the trial court can't, doesn't have subject matter jurisdiction to that concept because they never could. It's a 24-year-old child. In that particular case, they hadn't met the requirements of clarity of the child, unfit, or whatever they need. So that was my example in my brief of what subject matter jurisdiction is. When you have an agreement, if the court had subject matter jurisdiction to make, to approve that agreement in the first place, then the agreement stands. That's the couple of cases I referenced, mentioned that here as cases one. If you subscribe to the concept that an agreed order is not an agreed order unless something is planned, you have invalidated mediation. You've invalidated every agreed order that's ever existed. You've invalidated some of the promises. You've invalidated even the possibility where very often parties will reach agreements before filing anything. If they're in agreement, just take care of it all at once. The interesting thing in this case, which is kind of a question mark, is the original agreement between the two in 2004 was agreed. It was an agreed order. So does that logic now mean that the court didn't have subject matter jurisdiction because everything wasn't played in that service? The statute, the first part of it, 5-502, says the whole concept of this statute, Marriage and Dissolution Act, is to promote amicable settlements. So the trial court was taken away from the ability to grant. Nothing was granted. Nothing was ordered. No objections were made to subject matter jurisdiction. It was taken out of the court's decision. And a significant percentage of cases being settled anyway, a court can recognize an agreed order within the context of what is its subject matter jurisdiction. Now, I kind of consider their position number one, subject matter jurisdiction, and number two being agreed order. I consider those kind of the same things. To me, they're the same even in my brief as I was reading and I referenced them. These are the same kind of concepts. The fact that the parties agreed has removed all of the subject matter or jurisdictional problems that might occur. Now, I'm not going to speak to the fact of whether or not Jason's original petition in this circumstance requested removal because it doesn't matter. Because I do address it in my brief, I'm not going to address it in oral argument, but it doesn't matter because the parties reached an agreement. They stepped out. To the extent that it's claimed that the other party didn't know, again, frankly, I'll just reference my brief in which the court sat them both down and said, Do you agree to all this? Do you agree to ask the questions of both of them? Nothing indicates in the record of any kind of problematic procedural issue. No subject matter, objections, et cetera. So each time I would think about it, I kept going back to the concept. This is an agreement. This is agreed over. Both parties had a terms. Both parties negotiated the same as we do hundreds and hundreds of times. Would this concept then invalidate every agreed order that now exists? Well, I guess it kind of would. Some of the cases actually reference the court's ratification of a private agreement. If mom and dad have a private agreement outside of court and then write it up and it all looks nice and they go to court and somebody has a problem with it, that was some of the other cases that were listed in both briefs, actually. So even in this case, the trial court didn't ratify an agreement over anybody's objection. Can you tell me how old the boy is? Yes, the boy is 15 next month. Girl turned 13 last month. Quick reference was made to witnesses being barred. Again, my brief speaks to that. Jason filed a motion to change visitation, change child support. Jason filed a motion to change custody, which had a long list of allegations. The evidence was not barred, as Ms. Merrill had stated. Witnesses were barred in direct testimony, but they weren't barred in rebuttal, which means that if Jason had had a hearing and had presented those witnesses, then the only reason those witnesses would have been needed was to support his case. They would have been used in rebuttal, but that doesn't matter because everyone agreed anyway. It's clear that the parties reached a negotiated agreement because Jason's first motion went by custody, requested custody of both children, two kids. The result was the boy lives with him, the girl lives with her, as an additional illustration of a thought-out planned agreement that went through the discovery of mediation. The parties were represented by counsel at the time. So the last thing I'll leave the court with is the parties' original 2004 agreement was by agreement, and I wondered what the pleadings said in that circumstance, and I kind of thought, it doesn't matter what the pleadings said. It doesn't matter who filed it and requested custody or joint custody or sold or anything else because they reached an agreement even in their first 2004 agreement. So the request lends itself to the problem of invalidating that earlier order. They didn't ask for what they agreed for. Did the court not have subject matter jurisdiction in 2004? So continuing to go through it like that, it never made any sense. So for those reasons, to be honest, I have a question mark on the coercion problem because it is my position that that would wait because it was set for hearing August 29, 2014. It didn't go through. A hearing could have been reset. The subpoena for a former counsel to show up was withdrawn. My position on the coercion is that it was waived. My position on the subject matter jurisdiction and the findings is that it was an agreement, an agreed order to the parties. Thank you. Thank you. Thank you. Mr. Marino, you have the opportunity to make a request. Thank you. Attorney Carmine made a statement that if two parties are to reach an agreement, they can enter that agreement and just take it over to the circuit court and have it entered. That's not the case. You still have to file a petition to have the court approve an agreement in stipulation where you're asking the court for the relief of approving the agreed order and then they rule on the pleading and they enter the agreed order. You can't just take something over and have the court give you something if you haven't asked for it. So that's not what happened, and that's not what will ever happen in that situation because the circuit court is not a court of limitless bounds. And frankly, all you have to do is ask for the court to have jurisdiction over something because they're a court of general jurisdiction, and they will then have it. So if you ask for a certain relief, then they're generally going to have the authority to do it. But unless you ask for that jurisdiction to be invoked, it's not invoked. And the Lujan v. Williams case, which I've previously cited and Mr. Carnine attempted to rebut, it specifically says this does not matter if the court could have had subject matter jurisdiction if the proper complaint was filed. All that matters is whether the correct complaint was filed. And that's on page 20 of my brief that I specifically cite that quote. But I think it's uncontested in this case that the correct complaint wasn't filed. Mr. Carnine's not stated, but removal was requested. Judge Hardigan stated removal wasn't requested, but an agreement was entered. Everybody agreed removal wasn't requested, and I think that ends it right there. Lujan v. Williams says you have to ask for removal if you want to have it granted for you. Now, as to Mr. Carnine's statement, it doesn't matter because it was by agreement. Well, other than the fact that all of the case law says even if it was by agreement, you still have to, in your underlying pleadings, have asked for that relief, which I believe it's uncontested. That wasn't done here. So to end my argument, I would like to refer the court to a case that was decided on the final two pages of my brief, and that's the Lujan v. Williams case. And just to summarize the facts of this case, it was a custody case where a petition was filed asking to modify child support. Proper notice wasn't given to the mother, and a hearing was had, and the court gave the father custody, even though all that was asked for was a modification of child support. There was no agreed order entered, was there? No, there was not.  That's right. And I want to state this for the proposition, though, that when I filed my motion to stay, and it was Ms. Laundrie at this point, it was not Mr. Carnine, stated the court should take into consideration that by entering a stay or reversing this order, the hardships that would take place on the minor child, if he had to then go back to mom and then the circuit court would have to deal with it and we'd basically have kids flip-flopping. And our court said we recognize our obligation to reverse the trial court's order in the interest of stability and order of our judicial system, and more important, the fundamental justice to the mother. And the defendant has available to him the proper procedures to petition for Tiffany's custody. So I would just ask the court to consider that the fundamental principle that an attorney or a pro se litigant, they have to ask the court for what they want for an order to be entered. And that principle is more important than anything. Our justice system is more important than any of the unfortunate things that might fall down from there. If the order were to be reversed, if it would be unfortunate that Mark would have to come back here. But the Lynch and B. Williams case also, and it was a case where the minor children were split up, it does point out that another child had been with mom the whole time and there had never been an objection made that she was in any danger or the visitation wasn't occurring. And that's the case here too. Mark would just be coming home to where he had lived for the past nine years and be with his sister, and visitation had been occurring. So, I mean, this isn't going to be such a culture shock. He'd be going back to the school he had been in. And if the court does that, then Mr. Suwan still can ask for custody and removal. Thank you. Thank you. Thank you both for your briefs and arguments. And we'll take the matter under advice.